UNITED STATES TRUST COMPANY OF NEW YORK and MORGAN J. O'BRIEN, as Trustee, etc., of HERMAN WRONKOW, Deceased, Plaintiffs, *v.* JAMES G. BLAKE and MARGARET LUEZ, Defendants.

First Department, March 4, 1921.

Municipal corporations — city of New York — fire commissioner without authority to order installation of electric fire alarm, standpipe, etc., in hotel — exclusive authority of superintendent of buildings to make such orders — order of commissioner of water supply, gas and electricity for removal of violations in electrical equipment a ministerial act and valid though not signed by commissioner personally — landlord and tenant — action by landlord against lessee and assignee of lease for expense incurred in complying with said orders — assignor of lease not liable where not notified of order.

The deputy fire commissioner of the fire department of the city of New York has no authority to order the owner of a hotel to provide an adequate interior electric fire alarm system with bells and gongs, and to install a standpipe and make other structural changes for the purposes of fire protection. Orders so issued are illegal and void, because not authorized by section 20 of the Fire Prevention Ordinance of 1915, which defines the only authority that the fire commissioner has to make orders for purposes of fire protection.

*It seems,* that said orders should have been made by the superintendent of buildings, and not by the fire commissioner of the city, under the authority vested in said superintendent by sections 580, 581 and 650 of the Building Code of 1915.

The order issued by the commissioner of water supply, gas and electricity directing the owner to remove violations in electrical equipment was valid though not signed by the commissioner personally, for the issuing of the order was not a judicial act and did not involve the exercise of

discretion on the part of the commissioner, but was a ministerial act which might properly be performed by the chief clerk of the department under authority conferred upon him by the commissioner.

Accordingly, in an action by the owner against the original lessee and the assignee of the lease to recover the expense incurred by the plaintiff in making the changes, under a covenant in the lease whereby the tenant agreed to comply with orders made by the departments in question, the plaintiff is not entitled to recover the expense incurred in complying with the orders issued by the deputy fire commissioner, but is entitled to recover from the assignee of the lease the expenses incurred in complying with the orders issued by the commissioner of water supply, gas and electricity.

However, as notice of said orders was not given to the original lessee, no recovery can be had against her.

MOTION by plaintiffs, United States Trust Company of New York and another, as trustees, etc., for a new trial on a case containing exceptions, ordered to be heard at the Appellate Division, First Department, in the first instance, after the plaintiffs were nonsuited, and their motion made at the close of the case for a directed verdict was denied, on a trial before the court and a jury at the New York Trial Term in February, 1920.

*George L. Shearer* of counsel [*John N. Drake* with him on the brief; *Stewart & Shearer*, attorneys], for the motion.

*Schuyler C. Carlton* of counsel [*Bertram L. Kraus* with him on the brief; *Gleason & Carlton*, attorneys for the defendant Blake, and *Wesselman & Kraus*, attorneys for the defendant Luez], opposed.

*John F. O'Brien* of counsel [*John P. O'Brien, Corporation Counsel*], as *amicus curiæ*.

MERRELL, J.:

This case comes to this court upon an order of the court at Trial Term directing that the exceptions of the plaintiffs to the rulings of the trial court taken upon the trial and to the nonsuit and dismissal of plaintiffs' complaint and to the denial of plaintiffs' motion for the direction of a verdict in plaintiffs' favor, be heard in the first instance by this court under and pursuant to section 1000 of the Code of Civil Procedure.

The action was brought by the plaintiffs, as owners of an

apartment house known as the Schuyler Hotel, at 57–63 West Forty-fifth street, in the borough of Manhattan, to recover of the defendants, Margaret Luez, as lessee, and James G. Blake, as assignee of the lease, of said real property, for certain alterations made to said property in conformity to three alleged orders, the first two of which were made by the deputy fire commissioner of the fire department of the city of New York, and the third order purporting to have been made by the commissioner of the department of water supply, gas and electricity of the city of New York. The building in question was nine stories in height, and, above the office and dining-room floor, consisted of typical floors, each floor containing eight separate suites of living apartments. The hotel was strictly an apartment house used for residential purposes, and not for the accommodation of transient guests. The original lease under which the defendants held was made February 28, 1910, by the Schuyler Land and Building Company to the defendant Margaret Luez, for a term of three years, ending March 1, 1913, at an annual rental of $27,500. The tenant had an option to renew said lease at an annual rental of $30,000 to March 1, 1915, and to a further renewal for five years from March 1, 1915, at an annual rental of $32,500. Subsequently to the execution of said lease the Schuyler Land and Building Company conveyed the property to one Herman Wronkow, who has since died, and during all the times material to the issues herein the said real property was and still is held and owned by the plaintiffs as trustees under the last will and testament of said Herman Wronkow, deceased. The lease in question was assigned by the defendant Luez to the defendant James G. Blake on December 15, 1911, the assignor, however, remaining liable under the covenants of said lease by her to be performed. The assignee, Blake, upon the assignment of said lease to him, assumed the payment of the rents reserved therein and assumed all the terms, provisions and conditions therein contained. The defendant Luez exercised the options as to both extensions and her assignee, Blake, therefore, had the effect thereof.

The plaintiffs base their cause of action herein upon the two orders made by the fire commissioner of the city of New York and the order purporting to have been made by the com-

missioner of water supply, gas and electricity of said city under a clause contained in said lease reading as follows: "And it is further covenanted and agreed that the tenant shall and will at all times during the term of this agreement comply with, and at her own expense perform and fully satisfy, all municipal and United States regulations, laws and ordinances, which may relate to and affect the said demised premises and all ordinances, regulations and requirements of the Board of Health, Bureau of Buildings, Tenement House Department, and any and all other municipal departments, bureaus and officials whatsoever, and make all improvements that may be ordered or required by such public or municipal authorities; * * *."

The orders with which plaintiffs complied and under which they incurred the expense for which they ask reimbursement herein from the defendants were, breifly, as follows:

The first order, No. 37764F, bears date June 2, 1915, and was made by the deputy fire commissioner of the fire department of the city of New York, and ordered and required the owner of said apartment house, within thirty days from the date of the service of said order to " provide an adequate interior electric fire alarm system with bells or gongs."

The second order, No. 37765F, bears date June 15, 1915, and ordered and required the owner of said building, within thirty days from the date of the service of said order, to " 1. Install standpipe four inches in diameter tested to withstand a pressure of 300 lbs. per square inch, extending from cellar to roof, with necessary check valves and 2 1/2" regulation Fire Department outlets on each story (including basement, cellar and roof) placed within main stairway enclosure in easterly building. Each outlet to be provided with sufficient feet of 2 1/2" standard hose attached thereto. Such standpipe to be connected to the tank on roof and cross connected to the 3" line in the center building and the 4" line in the westerly building. The house supply from tanks on roof of easterly and westerly buildings to be so arranged as to leave a reserve supply of at least 3500 gallons for standpipes at all times. The present 3" line in center building to be disconnected from tank on roof of same. Standpipe to be connected with one two-way 3" siamese connection with

clapper valves and caps and sign placed on street front of building at least 18 inches and not more than two feet above the sidewalk in a horizontal position accessible to the Fire Department.   All connections to be of regulation Fire Department pattern and sizes.

" Plans and specifications in duplicate of the above installation, showing location of partitions, stairways, enclosures, etc., must be filed with and approved by this Department before the above work may be commenced.

" 2. Provide metal or kalameined frames and sashes with wired glass for all windows opening from cellar to light court at west side, and make same approved self-closing.

" *And within fifteen days from date*

" 3. Provide fireproof self-closing doors at foot of stairways, west and center buildings from cellar to 1st story.

" 4. Provide a fireproof self-closing door from cellar to light court at west side.

" 5. Provide metal frames with wire glass for skylight over easterly light court, 1st story, replacing defective frames and plain glass.

" 6. Provide fireproof self-closing doors at the north and south sides of each of the three stairways, and a fireproof self-closing door with wired glass transom and opening from bedroom to stairhall of center building on 2nd, 3rd, 4th, 5th, 6th, 7th, 8th and 9th stories.

" 7. Provide a connecting balcony between the top balconies of the east and center fire escapes.

"All structural changes must be approved by the Bureau of Buildings."

The third order, being No. 31901, purports to have been made by William Williams, commissioner of the department of water supply, gas and electricity of the city of New York, and to have been made December 19, 1916, and whereby the owners of said building were directed to remove immediately the following violations existing against said property: " Electrical equipment in premises is in generally defective condition. The conduit system consists partly of pipe, loom and paper tube.   The insulation on conductors is hard and brittle and consists of rubber, covered with a tape wrapping.   Panels are in defective and broken condition; metal parts are corroded

and covered with inflammable dust; fuses are not standard. Fixtures are broken in some places and defective. Flexible cord has been promiscuously strung around rooms is fastened to nails, hooks, etc. In cellar flexible cord is used where standard method of wiring should be employed. Various fused switches and busbars are not enclosed. The condition of the equipment in this cellar is extremely hazardous."

This last-mentioned order was not signed by the commissioner of water supply, gas and electricity, but his name was stamped thereon by the chief clerk in his office without the knowledge of said commissioner and without the contents of said order or the matters therein embodied having been brought personally to the attention of said commissioner.

The lease under which the defendants occupied said property provided that if the tenants did not comply with the provisions of said lease and did not perform and fully satisfy the regulations, laws and ordinances therein referred to, the owners might comply with such regulations, laws and ordinances relating to the demised premises and make the improvements ordered and directed by such orders and pay the expense thereof and add the same to the rent to be charged to the lessee of said premises. The lease also contained a provision that in default of any of the covenants contained in the lease the landlord might re-enter, and that the tenant would not occupy the premises in any manner contrary to the law or ordinances. The lease also provided: " No alteration whatever shall be made without the written consent of the landlord."

The plaintiffs, as a basis of their claim for recovery, allege that they demanded that the defendants comply with each of said alleged orders, and that the defendants failed and refused to comply therewith, and that the plaintiffs were obliged to comply with said orders, and in their complaint allege that they expended in complying therewith in all the sum of $11,621, for which judgment is demanded herein against the said defendants.

Subsequently to the close of the evidence, but before judgment herein, the parties hereto stipulated in writing as to the items of the plaintiffs' claim, including interest thereon to the date of trial. From said stipulation it appears that the total claim of the plaintiffs against the defendants for expenses

incurred in complying with said several orders amounted in the aggregate, with interest to the time of trial, to the sum of $13,792.45.   Itemized, these expenses were as follows:

| | |
|---|---:|
| Cost of removing violation under order 37764F of fire department, with interest............. | $1,631 70 |
| Cost of removing violation under order 37765F of fire department, with interest............. | 10,075 87 |
| Cost of removing violation under order 31901 of department of water supply, gas and electricity, with interest...................... | 1,494 88 |
| Cost of cancellation of contract for removing violation under order 31901, department of water supply, with interest...................... | 590 00 |
| Total claim and interest............... | $13,792 45 |

Both defendants appeared herein and interposed a general denial to the plaintiffs' complaint.  The defendant Luez pleaded that said alleged orders, if made, were unreasonable, unnecessary and oppressive, and that the plaintiffs were not under any legal duty to comply therewith, and that the defendants were not bound thereby.  It is conceded that the defendant Luez had no knowledge of the alleged orders until long after the completion of the work by the plaintiffs.

Upon the trial the defendants took the position that the fire commissioner was unauthorized by any statute or ordinance to make the orders of June second and June fifteenth, respectively, requiring the installation of an interior electric fire alarm system and the standpipe, water tank upon the roof, and other alterations required by said orders; that neither of said orders was legal, and that the owners were not legally obligated to comply therewith; that having complied with said illegal orders and having incurred the said expense with relation thereto, the owners, nevertheless, could not recover such expense of the defendants.

The defendants contended upon the trial that, as to the order purported to have been made by the commissioner of water supply, gas and electricity, said order was not signed by the commissioner, but had affixed thereto an impression made

by a rubber stamp placed thereon by a clerk in the office of said commissioner; that the making of said order involved the exercise of discretion by the commissioner which could not be delegated to a clerk in his office, and that the commissioner of water supply, gas and electricity, having had no personal connection with the granting of said order, the pretended order was of no validity or effect, and that the owners, in complying therewith and incurring the expense for which they ask reimbursement from the defendants, have no right of action to recover the same.

The entire evidence upon the trial was presented to the court and jury by the plaintiffs, the defendants introducing no proofs. At the close of the plaintiffs' case the court, on motion of the defendants, struck out all evidence as to what had been done by the plaintiffs pursuant to the two orders of the fire commissioner upon the ground that said commissioner was without authority to make said orders, and that, therefore, the orders were illegal. As to the order of the commissioner of water supply, gas and electricity, the court held that the making of said order involved a discretion on the part of the commissioner which was never exercised by him, and that no order was, in fact, made. Thereupon, upon motion of the defendants, the court directed a nonsuit and dismissed the plaintiffs' complaint. The plaintiffs duly excepted to the order of the court striking out the evidence as to what had been done by the plaintiffs under the orders of the fire commissioner and to the holding of the court that the alleged order of the commissioner of water supply, gas and electricity was never legally made, and to the granting of defendants' motion for a nonsuit and dismissal of the complaint. The court thereupon directed that the plaintiffs' exceptions be heard by the Appellate Division in the first instance, pursuant to section 1000 of the Code of Civil Procedure.

It seems to me that the trial court was entirely correct in granting defendants' motion to strike out all evidence with relation to any work done or any expense incurred in complying with the orders of the fire commissioner of the city of New York, bearing date, respectively, June 2, 1915, and June 15, 1915, above referred to. The orders of the fire department were pursuant to sections 774 and 775 of the Greater New York

charter.   Whatever powers the fire commissioner had in the premises were derived from sections 774 and 775 of said charter. This court said in *Matter of Browning* v. *Adamson* (175 App. Div. 526), in treating of the power of the fire commissioner, as follows: " It is not necessary to review the history of sections 774 and 775 of the Greater New York charter (Laws of 1901, chap. 466, added by Laws of 1911, chap. 899, as amd. by Laws of 1913, chap. 695, and Laws of 1914, chap. 459),* for, in our opinion, the fire commissioner's powers thereunder originally were limited to the enforcement of the laws and city ordinances, and the provision quoted is the only one relevant to the question at issue.   When by further amendment he was given the power to enforce the regulations ' of the industrial board of the department of labor in respect to fires or to the prevention of fires' (Laws of 1914, chap. 459, amdg. Greater N. Y. Charter, § 775), he did not receive the power to make the order in question, for section 79a of the Labor Law (Consol. Laws, chap. 31 [Laws of 1909, chap. 36], as added by Laws of 1913, chap. 461) as then existing provided for the inclosure in fireproof material of light and other shafts in factory buildings thereafter erected, and the building in question is not in that category.   Therefore, if the commissioner properly made the order now under consideration, it must be because of the power given him by the ordinance above set forth.   Realizing the importance of upholding the jurisdiction of the fire commissioner whenever possible, and the propriety of respecting his discretion when exercised in a matter so vitally affecting life and property as fire prevention, I am unable to find in the ordinance any power conferred upon him to order any structural changes in a factory building.   It will be noted that the fire commissioner is given power to direct the installation of specific articles enumerated in the section, which are in the nature of implements or physical aids to the extinguishment of fire, or the prevention of its spread, viz., ' fire hose, fire extinguishers, buckets, axes, fire hooks; ' the only other articles mentioned are ' fire doors,' which can be easily hung on existing walls or surfaces, adjusted to present conditions, and involve no structural changes in the building.   Then follow

---

* Since amd. by Laws of 1916, chap. 503.— [REP.

the general words, ' and other means of preventing and extinguishing fires.' Applying the rule of *ejusdem generis*, this provision did not extend the power of the commissioner beyond directing the furnishing of implements and articles analogous to those enumerated. The general language used did not extend the class or nature of the articles enumerated by the special language. (*Matter of Aylesworth* v. *Phœnix Cheese Co.*, 170 App. Div. 34; *Daly* v. *Haight*, Id. 469.) "

As to order No. 37764F, which required the owners to provide an adequate interior electric fire alarm system with bells or gongs, whatever authority the fire commissioner had must have been derived from section 20 of article 2 of chapter 12 of the Code of Ordinances of the City of New York of 1915 relating to fires and fire prevention and known as the Fire Prevention Ordinance. That section provides as follows:

" Sec. 20. Fire alarm and fire-extinguishing appliances.— The owners and proprietors of all * * * hotels * * * shall provide such means of communicating alarms of fire, accident or danger to the police and fire departments, respectively, as the fire commissioner or the police commissioner may prescribe, and shall also provide such fire hose, fire extinguishers, buckets, axes, fire hooks, fire doors and other means of preventing and extinguishing fires as the fire commissioner may direct." (See Cosby's Code Ord. [Anno. 1915] p. 222.)*

The learned trial court held, I think, correctly, that the installation of an interior electric fire alarm system with bells and gongs, under the *ejusdem generis* rule, was not embraced within the provisions of section 20 of the Fire Prevention Ordinance as " other means of preventing and extinguishing fires," and that the installation of an electric fire alarm system was not *ejusdem generis* to " fire hose, fire extinguishers, buckets, axes, fire hooks, fire doors," specified in the section, and that under the authority of *Matter of Browning* v. *Adamson* (*supra*) the fire commissioner was not empowered by said provision beyond the direction that the owner furnish implements and articles analogous to those specified and enumerated in the section. The same applies, it seems to me, to the order

---

* Since amd. by Code of Ordinances of 1916, chap. 12, art. 2, § 20, as amd. by Ord. Nov. 12–19, 1918; Cosby's Code Ord. [Anno. 1921] pp. 335, 592.— [REP.

No. 37765F, and that the alterations required by both of said orders were structural in their nature and were not such as the fire commissioner was authorized to require. Moreover, it seems to me that there is much force in the defendants' position upon the trial and upon this appeal that any order in the premises should have been made by the superintendent of buildings and not by the fire commissioner of the city. The Building Code, by sections 580 and 581, provided as follows:

" § 580. General provisions.— All buildings now erected, unless already provided with a 3-inch or larger vertical pipe, or hereafter to be erected, exceeding 150 feet in height, shall be provided with an auxiliary fire apparatus and appliances, consisting of water tank on roof or in cellar, standpipes, hose, nozzles, wrenches, fire extinguishers, hooks, axes and such other appliances as may be required by the fire department — all to be of the best material and of the sizes, patterns and regulation kinds used and required by the fire department.

" § 581. Standpipes.— 1. When requisite. In every building now erected, unless already provided with a 3-inch or larger vertical pipe, which exceeds 100 feet in height, and in every building hereafter to be erected exceeding 85 feet in height, and when any such building does not exceed 150 feet in height, it shall be provided with a 4-inch standpipe, running from cellar to roof, with 1 two-way 3-inch Siamese connection to be placed on street above the curb level, and with one 2½ inch outlet, with hose attached thereto on each floor, placed as near the stairs as practicable. If any of the said buildings extend from street to street, or form an L shape, they shall be provided with standpipes for each street frontage."

By section 650 of the Building Code it is provided that "All notices of the violation of any of the provisions of this chapter, and all notices directing any thing to be done, required thereby, * * * shall be issued by the superintendent of buildings, and shall have his name affixed thereto." (See Code of Ordinances of 1915, chap. 5, §§ 580, 581, 650; Cosby's Code Ord. [Anno. 1915] pp. 127, 136.)*

---

* Since amd. by ordinances effective November 29, 1915, and December 21, 1915, and Code of Ordinances of 1916, chap. 5, §§ 580, 581, 650; Cosby's Code Ord. [Anno. 1921] pp. 153, 161.— [REP.

First Department, March, 1921.    [Vol. 196

It seems to me that where the building department and the commissioner of buildings are thus clearly clothed with authority to do a certain thing, such authority is exclusive, and that the fire commissioner, under the very doubtful right, conferred by section 20 of the Fire Prevention Ordinance, to require the owners of hotels to provide " other means of preventing and extinguishing fires," should not be held to be authorized to make the orders for the structural changes embraced therein.    The erection of the four-inch standpipe leading to the 3,500-gallon water tank upon the roof, which tank, empty, weighed five tons, and filled with water, weighed twelve tons, and the erection of which necessitated drilling through the slate stair-treads from cellar to roof, surely involved structural changes which the fire commissioner was not authorized to require. Indeed, the order itself requires that "All structural changes must be approved by the Bureau of Buildings."

As to the order of the department of water supply, gas and electricity, I am of the opinion that under the evidence and in accordance with the custom and practice existing in such cases, the order was properly made and was an enforcible order of the department of water supply, gas and electricity. While the evidence shows that the attention of the commissioner was not directed to this particular case or to the order which was issued and upon which, by use of a rubber stamp, his name was affixed, it appears that the order was made in accordance with the general practice of the department in such matters.    It was the practice of the department of water supply, gas and electricity to employ inspectors, whose duty it was to make examinations and inspections of buildings in the city of New York with a view of ascertaining whether or not the electric wiring, fixtures and appliances used in the buildings inspected were in accordance with the standard established by the department, were properly installed and were in proper condition of repair.    In accordance with the general practice of the department an inspector, one Goewitz, made an inspection of the Schuyler Hotel property and made his written report to the chief inspector of the department, one Joseph Honey, and that the latter duly examined such report and approved of the same, and thereupon directed that an order issue to remove the violations specified in such report;

that thereupon a formal order was prepared by a stenographer in accordance with the report of the inspector as approved by the chief inspector and, after comparing the same with the approved inspection report, the chief clerk stamped the name of the commissioner of water supply, gas and electricity upon the order, and the same was then served upon the owners of the property. That the particular order involved in this case was issued in accordance with the well-established custom of the department is conclusively proven by the testimony of one Hubert Wynkoop, an electrical engineer in charge of the division of electrical inspection of the said department of water supply, gas and electricity. Wynkoop testified that he had been employed in connection with said department as electrical engineer in charge for twelve years, and that the order in question was issued pursuant to the instructions of the commissioner. Wynkoop further testified that the form of the order was designed and prepared by the commissioner, William Williams, and under general instructions orders were issued from the department from time to time, aggregating seven thousand or eight thousand orders in the course of a year. The witness further testified that such orders were issued from the five borough offices of Greater New York and were O. K.'d by the chief inspector upon a report submitted by the inspector for that district, and that the order in question was a regular order of the department, authorized by the commissioner and became effective upon the countersignature of the order by the chief inspector. Wynkoop testified that when an inspector was sent on a job where there was electrical equipment, he submitted a report covering any defects, and that in the present case such a report of the local inspector was submitted to the chief inspector and received the chief inspector's O. K., which the witness identified, and that thereupon a formal order prepared by the stenographer was compared with the original report of the inspector O. K.'d by the chief inspector, and that the chief clerk signed the same. Wynkoop further testified that the chief inspector received his power in the premises through verbal orders of the commissioner transmitted through the witness to the chief inspector; that through various verbal orders and through conferences at the time the form of the order which was

adopted was approved by the commissioner. The witness, Wynkoop, further testified that orders of precisely the same sort and type had been issued by the department of water supply, gas and electricity for twenty-two years.

It seems to me that, under the evidence and in accordance with a practice which had obtained in the department for over twenty years, during each year of which period many thousands of orders were issued, the granting of the order in question was not a judicial act and did not involve the exercise of discretion on the part of the commissioner of water supply, gas and electricity, but, on the contrary, the actual making of the order was a ministerial act performed by the chief clerk of the department under authority conferred upon him by the commissioner. So far as our attention is called to the matter, this is the only instance in over twenty-two years where the legality of any order of the department of water supply, gas and electricity has been questioned, upon this ground, although during that long period of time orders aggregating eight thousand a year have been uniformly issued as was the order in question. It would be a physical impossibility for the commissioner of water supply, gas and electricity to examine each particular case or the order in every case requiring the removal of violations, and were we to hold that the making of such an order was a judicial act calling for the exercise of the individual discretion of the commissioner, we would be imposing upon that official a task which he could not perform and we would have held invalid the thousands of orders heretofore issued by the department, many of which are still outstanding. The evidence indicates that a well-defined practice existed whereby orders were issued as of course for proven violations of ordinances of the city with respect to electrical equipment. Where violations were clearly shown to exist, orders for the removal thereof were made as of course, and the making of the order of removal involved no act of discretion, but was purely ministerial.

I am, therefore, of the opinion that the order of the commissioner of water supply, gas and electricity was duly made and was enforcible upon the owners of the real property in question.

The question is then presented as to whether or not the

defendants, under the terms of the lease granted.to the defendant Luez and by her assigned to the defendant Blake, can be held for the expenditures of the plaintiffs in the removal of the violations under said order of the commissioner of water supply, gas and electricity. The evidence does not show that the defendant Luez ever received notice of the order in question, nor does it appear that said defendant had any information thereof until after the work had been performed by the plaintiffs for the removal of the violations embraced in said order. As to the defendant Blake, however, it appears that notice was given him at or soon after the promulgation of said order and that he was in occupation of the premises and was at all times advised of the repairs that were being made, and that he made no objection thereto nor did he assert any claim that he was not liable therefor under the terms of the lease which he held as assignee. It seems to me, therefore, that the defendant Blake, under the terms of the lease, the obligations of which he had assumed, is liable to the plaintiffs for the expense incurred by them in removing the violations mentioned in the said order of the commissioner of water supply, gas and electricity, but that the defendant Luez is not liable thereon, she never having received notice of said order or of the removal thereof by the plaintiffs. Therefore, as to said defendant Luez a nonsuit was properly granted and the complaint properly dismissed.

The exceptions of the plaintiffs should be overruled, except with reference to plaintiffs' claim against the defendant Blake for reimbursement in removing the violations embraced in the order of the commissioner of water supply, gas and electricity, and that as to said defendant the plaintiffs, under the stipulation entered into subsequently to the trial, are entitled to judgment in the sum of $2,084.88, besides costs, and that the defendant Luez should have costs against the plaintiffs.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concur.

Exceptions overruled as indicated in opinion and judgment ordered for plaintiffs as directed in opinion, with costs to defendant Luez against the plaintiffs. Settle order on notice.